**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

| | |
|---|---|
| CH HOTEL, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ALICE + OLIVIA, LLC,<br><br>Defendant. | CIVIL ACTION NO. ____________<br><br>**JURY TRIAL DEMANDED** |

## VERIFIED COMPLAINT

1. Plaintiff CH Hotel, LLC ("Plaintiff") owns and operates The Colony Palm Beach Hotel ("The Colony"), which was founded in 1947, and over nearly 80 years has grown into an iconic and famous landmark hotel on Palm Beach Island, Florida, instantly recognizable by its signature pink façade, striped awnings, and tropical color palette, with branding well-known in Florida and around the world.

2. Without authorization, Defendant has designed, manufactured, and is selling clothing displaying The Colony's iconic imagery, creating a false association between Defendant's products on one hand and Plaintiff and The Colony on the other, which is and will continue to create a substantial likelihood of consumer confusion. Plaintiff brings this action to enjoin Defendant Alice + Olivia, LLC ("Defendant") from continuing to falsely associate with The Colony, from infringing and diluting Plaintiff's federally registered PINK PARADISE® trademark, and to recover damages for the harm Defendant has caused to Plaintiff's goodwill, brand, and reputation.

3. Defendant's conduct constitutes (1) trademark infringement under 15 U.S.C. § 1114 (Lanham Act § 32(a)); (2) false designation of origin under 15 U.S.C. § 1125(a) (Lanham

Act § 43(a)); (3) trademark dilution under 15 U.S.C. § 1125(c) (Lanham Act § 43(c)); (4) unfair competition under 15 U.S.C. § 1125(a) (Lanham Act § 43(a)); (5) unfair competition in violation of Florida Statutes §§ 501.201 et seq., and (6) common law unfair competition.

4. Designated a landmark by the Town of Palm Beach in January 2020, The Colony stands as one of Palm Beach's most iconic and storied destinations, instantly recognizable by its signature pink façade, striped awnings, and lush tropical palette, and has cultivated substantial goodwill and a loyal following of consumers through continuous operation for most of the century.

5. Unbeknownst to Plaintiff, Defendant designed, manufactured, marketed and sold a line of garments that, without authorization, reproduces and prominently displays imagery of The Colony, including its iconic pink architecture, famous awnings, and tropical color palette on a skirt, dress, and shirt (collectively, the "Infringing Products"). Exacerbating its false association with Plaintiff, Defendant also labeled the clothing collection that contains the Infringing Products "Pure Paradise", which is confusingly similar to and likely to cause confusion with Plaintiff's federally registered PINK PARADISE® trademark.

6. Plaintiff recently became aware of the Infringing Products when Defendant publicly advertised the launch of the Infringing Products on its official Instagram account, prominently displaying photographs of the Infringing Products. A true and accurate copy of Defendant's Instagram post is attached as **Exhibit A**.

7. Plaintiff attempted to amicably resolve this matter with Defendant, but Defendant thwarted Plaintiff's attempts at resolution.

8. Plaintiff has been left with no choice but to seek Court intervention to stop Defendant's false association and the irreparable harm that Plaintiff and its famous brand is and will continue to incur absent injunctive relief.

## I. THE PARTIES

9. Plaintiff CH Hotel, LLC is a Delaware limited liability company, with its principal place of business at 155 Hammon Avenue, Palm Beach, Florida 33480.

10. Upon information and belief, Defendant Alice + Olivia, LLC is a New York limited liability company, with a place of business at 450 West 14th Street, 11th Floor, New York, NY 10014.

## II. STATUTORY BASIS AND NATURE OF ACTION

11. This action is for: (1) trademark infringement under 15 U.S.C. § 1114 (Lanham Act § 32(a)); (2) false designation of origin under 15 U.S.C. § 1125(a) (Lanham Act § 43(a)); (3) trademark dilution under 15 U.S.C. § 1125(c) (Lanham Act § 43(c)); (4) unfair competition under 15 U.S.C. § 1125(a) (Lanham Act § 43(a)); (5) unfair competition in violation of Florida Statutes §§ 501.201 et seq., and (6) common law unfair competition.

12. Plaintiff seeks injunctive relief, and an award of damages, among other remedies.

## III. JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction to hear and determine this controversy pursuant to 28 U.S.C. §§ 1331 and 1338 because the action arises under the federal Lanham Act. 15 U.S.C. §§ 1051 et seq.

14. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) as the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

15. This Court has supplemental jurisdiction to hear and determine the state-law claims, which arise under the statutory laws of the state of Florida, pursuant to 28 U.S.C. § 1367(a), because the state-law claims are so related to the federal claims that they form part of the same

case or controversy under Article III of the United States Constitution and derive from a common nucleus of operative facts.

16. Venue and personal jurisdiction are proper in the Southern District of Florida under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims herein occurred in this District.

17. This Court has personal jurisdiction over Defendant because, upon information and belief, Defendant has purposefully directed its activities that form the basis of this action toward the state of Florida, causing harm suffered in the state of Florida, and because this action is based on activities that arise out of or relate to those contacts. Upon information and belief, Defendant also maintains storefronts in Florida, including in this District, and maintains substantial business activities in Florida and in this District.

## IV. FACTUAL BACKGROUND

### A. The Colony's History

18. The Colony was founded in 1947 and stands as a landmark institution with a storied history spanning the better part of a century, including distinguished hospitality, cultural significance, and architectural prominence.

19. Instantly recognizable by its signature pink façade, distinctive striped awnings, and lush tropical palette, The Colony has become synonymous with the legendary "Pink Paradise" aesthetic, which defines its unique and immediately recognizable brand identity.

20. Since its founding, The Colony has cultivated an enduring reputation as one of the most recognizable and celebrated hospitality establishments in the United States.

21. For nearly 80 years, The Colony has served as a favored retreat for U.S. Presidents, members of the British royal family, Hollywood luminaries, and prominent figures of Palm Beach

society, thereby cementing The Colony's reputation and fame as a cultural and social cornerstone of American hospitality both domestically and abroad.

22. The Colony's distinctive aesthetic and atmosphere have been showcased in premier publications, including *Vogue*, *Town & Country*, *Vanity Fair*, and *Architectural Digest*.

23. The Colony itself has consistently been recognized as an icon of the luxury resort industry in the United States by *Condé Nast Traveler*, *Travel + Leisure*, and other esteemed publications.

24. The Colony has received many accolades, awards, and honors from respected industry organizations and travel authorities, further attesting to its celebrated stature and the exceptional quality of the goods and services offered.

25. This sustained and unsolicited media attention has further cemented The Colony's status as a renowned American institution, significantly enhancing the strength, fame, and distinctiveness of its imagery and brand in the minds of the consuming public.

26. The Colony's distinctive imagery, signature color palette, and recognizable design elements are exclusively associated with The Colony in the minds of consumers, serving as the central pillars of The Colony's brand identity and merchandise offerings and representing decades of consumer recognition.

27. The Colony's legendary identity is immediately recognizable by consumers, and its distinctive imagery has come to signify a singular standard of quality, exclusivity, and prestige in the hospitality industry.

28. Through decades of consistent use in commerce, The Colony's notable architecture and brand identity have acquired strong secondary meaning, such that consumers immediately associate The Colony's distinctive design elements and related branding and imagery with the

goods and services offered exclusively by Plaintiff.

29. Thus, The Colony has cultivated extraordinary prominence among consumers who recognize the hotel, purchase its exclusive products, and utilize its services, thereby elevating The Colony's name, imagery, and branding as recognized by the public as exclusively identifying Plaintiff and its goods and services.

**B. Plaintiff's Famous and Recognizable Trademarks and Imagery**

30. Among its intellectual property rights, Plaintiff is the owner of the following U.S. trademark and service mark registrations (collectively, "Registered Marks"):

| Mark | Registration No. | Registered | International Classes |
|---|---|---|---|
| THE COLONY HOTEL | 7385730 | May 14, 2024 | 4, 9, 14, 18, 20, 21, 24, 25, 28, 34, 35, 41, 43 |
| PINK PARADISE | 7773278 | April 29, 2025 | 29, 30, 35, 43 |
| PINK PARADISE (stylized) | 7773279 | April 29, 2025 | 29, 30, 35, 43 |

True and correct copies of the certificates of registration for the Registered Marks are attached as **Exhibit B**.

31. The Registered Marks are valid, subsisting, and in full force and effect, and constitute prima facie evidence of the validity of the Registered Marks, Plaintiff's ownership of those marks, and Plaintiff's exclusive right to use those marks in commerce in connection with the identified goods and services under Section 7(b) of the Lanham Act, 15 U.S.C. § 1057(b).

32. Plaintiff has continually and exclusively used its famous branding, distinctive imagery, and recognizable architectural design to build a successful reputation and cultivate significant consumer goodwill. Representative examples of The Colony's website and its branding

and imagery are attached as **Exhibit C**.

33. Plaintiff has cultivated extensive goodwill throughout the United States, and in this District, where The Colony is located.

34. The Colony's imagery and branding are distinctive and recognized by the consuming public as a designation of source for Plaintiff's hotel services, exclusive merchandise, including clothing, and hospitality offerings, among other goods and services.

35. The consuming public has come to recognize images and goods incorporating The Colony's distinctive architectural, design, and color elements, as well as the term "Pink Paradise" as originating from or being associated with Plaintiff and The Colony.

36. Due to the long-term and expansive use of its signature imagery and distinctive architectural design by Plaintiff and its predecessors, The Colony's branding is strong, and Plaintiff's rights over this imagery are expansive, as the public would and does associate imagery of The Colony exclusively with Plaintiff.

37. Plaintiff enforces its rights to protect its valuable brand, reputation, and goodwill that Plaintiff has spent significant time and resources building over 80 years.

38. Plaintiff has developed and used its distinctive branding and imagery in commerce in the United States since long before Defendant's unauthorized and confusingly similar use.

**C. Defendant's False Association With Plaintiff**

39. Upon information and belief, Defendant is designing, manufacturing, marketing, distributing, and selling the Infringing Products, which bear printed patterns that, without authorization, reproduce and prominently display imagery of The Colony and utilize The Colony's distinctive brand identity.

40. Upon information and belief, Defendant is the sole owner, designer, and producer of the Infringing Products.

41. Plaintiff had no knowledge of Defendant's design, manufacture, distribution, or sale of the Infringing Products.

42. Plaintiff did not give Defendant any authorization, permission, or license to use its imagery in the Infringing Products, on any associated webpages, in marketing materials, on social media accounts, or otherwise.

43. Representative screenshots of the product listings for the Infringing Products from Defendant's website at aliceandolivia.com are set forth below and attached hereto as **Exhibit D**.




44. The Infringing Products include prominent use of The Colony's iconic and recognizable architecture and imagery, as shown in the side-by-side comparisons set forth below, demonstrating that the designs printed on the Infringing Products are identical, or virtually identical, to the famous imagery of The Colony Hotel.

| The Colony Hotel Images | Alice + Olivia Design |
| --- | --- |
|  |  |
|  |  |

45. Defendant's unauthorized use of The Colony's distinctive imagery, color scheme, and brand is intended to and does trade on the goodwill that Plaintiff has cultivated in its brand and distinctive luxury goods and services, which point uniquely and unmistakably to Plaintiff and The Colony.

46. Plaintiff, The Colony, and its hotel services, exclusive merchandise, and hospitality offerings are famous throughout the United States.

47. Defendant's sale, marketing, advertising, and social media promotion of the Infringing Products is likely to be associated by consumers and the general public as being sold, provided, authorized, endorsed, or sponsored by Plaintiff, or as indicating that Defendant is in

some way affiliated with Plaintiff and The Colony, which it is not.

48. Actual consumer confusion has already occurred, for instance, on or about May 30, 2026, Instagram user @kathyprounis posted a video on her account, which is followed by over 120,000 individuals and brands, showcasing photographs of herself wearing pieces from the Infringing Products and stating she was "loving how Alice & Olivia layered the Colony Hotel and clock tower vibe into this outfit." A true and accurate copy of this Instagram post is set forth below and attached hereto as **Exhibit E**.






49. Defendant's sale, marketing, advertising, and social media promotion of the Infringing Products also dilutes the distinctive qualities of Plaintiff's famous and image and brand, which Plaintiff has cultivated for nearly 80 years before Defendant's infringement and false association, thereby causing Plaintiff to lose control of its carefully developed brand identity and goodwill.

50. Upon discovering the Infringing Products, Plaintiff attempted to amicably and discreetly resolve the matter with Defendant, but Defendant thwarted Plaintiff's attempts at an amicable resolution.

51. Defendant's wrongful acts are causing, and unless restrained will continue to cause, damage and immediate irreparable harm to Plaintiff, The Colony brand, and to Plaintiff's valuable

reputation and goodwill with the consuming public, for which Plaintiff has no adequate remedy at law.

**D. Defendant's Knowledge of Plaintiff and Willful Conduct**

52. Defendant had actual knowledge of Plaintiff, The Colony, and Plaintiff's famous brand and imagery before designing, manufacturing, and selling the Infringing Products.

53. Defendant maintains retail storefronts in Florida, including in Palm Beach County and this District, and has done so for many years. Defendant's physical presence near The Colony demonstrates Defendant's familiarity with Plaintiff's famous hotel, its renowned imagery, and its distinctive brand identity.

54. Defendant's principals, officers, and/or employees have visited The Colony and are personally familiar with its famous and distinctive architecture, signature pink façade, awnings, and tropical aesthetic.

55. Defendant's use of "Pure Paradise" as the name of the Infringing Products also demonstrates Defendant's knowledge of Plaintiff's PINK PARADISE® trademark and Defendant's willful intent to trade on Plaintiff's goodwill. The "Pure Paradise" designation is confusingly similar to and likely to cause confusion with Plaintiff's federally registered PINK PARADISE® mark. Both marks share the dominant term "Paradise," employ identical alliterative "P" phrasing, and differ only by the substitution of "Pure" for "Pink." This similarity is not coincidental.

56. Defendant's reproduction of The Colony's distinctive imagery—including its signature pink architecture, striped awnings, clock tower, and tropical color palette—on the Infringing Products demonstrates that Defendant specifically targeted Plaintiff's famous brand and trade dress. The precision and detail of Defendant's reproduction of The Colony's imagery could not have occurred without Defendant's actual knowledge of Plaintiff and The Colony.

57. Plaintiff's PINK PARADISE® trademark registrations (U.S. Reg. Nos. 7,773,278 and 7,773,279) are publicly available on the United States Patent and Trademark Office's database giving constructive knowledge of Plaintiff's trademark rights.

58. Despite its familiarity with The Colony and the Palm Beach market, Defendant willfully adopted The Colony's imagery and used a collection name confusingly similar to and likely to cause confusion with Plaintiff's federally registered PINK PARADISE® mark.

59. Upon information and belief, Defendant's conduct was willful, intentional, and undertaken with the purpose of trading on Plaintiff's goodwill and reputation.

**COUNT I**

**TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114**

60. Plaintiff realleges and incorporates each and every allegation in the paragraphs above as if fully set forth herein.

61. Plaintiff is the sole, exclusive owner of the federally registered PINK PARADISE® marks (U.S. Reg. Nos. 7,773,278 and 7,773,279).

62. Plaintiff's PINK PARADISE® marks, as used in connection with Plaintiff's hotel services, café services, retail store services associated with sale of branded merchandise including clothing, among other goods and services, is inherently distinctive and has acquired secondary meaning as a designation of source for Plaintiff's goods and services.

63. Plaintiff's federal trademark registrations for the PINK PARADISE® mark are valid, subsisting, and in full force and effect, and constitute prima facie evidence of the validity of the marks, Plaintiff's ownership of the marks, and Plaintiff's exclusive right to use the marks in commerce in connection with the goods and services identified in the registrations under 15 U.S.C. § 1057(b).

64. By virtue of its ownership of the federally registered PINK PARADISE® mark,

Plaintiff has the sole and exclusive right to use the PINK PARADISE® mark in commerce on and in connection with the goods and services recited in the registrations.

65. Defendant's use of "Pure Paradise" as the name of the Infringing Products is confusingly similar to Plaintiff's federally registered PINK PARADISE® mark. Both marks share the dominant term "Paradise," employ identical alliterative "P" phrasing, and differ only by the substitution of "Pure" for "Pink."

66. The likelihood of confusion between Defendant's "Pure Paradise" designation and Plaintiff's PINK PARADISE® mark is materially heightened and exacerbated by Defendant's simultaneous, unauthorized use of the distinctive and instantly recognizable imagery of The Colony Hotel on the Infringing Products. The combination of a confusingly similar trademark with the reproduced imagery of The Colony creates an unmistakable false association in the minds of consumers between Defendant's goods and Plaintiff.

67. Defendant has used and is using the "Pure Paradise" designation as a trade name and in connection with goods, including clothing and apparel, that are similar or related to those that Plaintiff offers under the PINK PARADISE® mark, including merchandise sold through The Colony's retail operations.

68. The goods that Defendant offers under the "Pure Paradise" designation and the goods and services that Plaintiff offers under the PINK PARADISE® mark travel in similar trade channels and target similar classes of consumers, including consumers interested in luxury resort lifestyle, fashion, and Palm Beach aesthetics.

69. Plaintiff has not authorized, directly or indirectly, Defendant's use of the "Pure Paradise" designation or any other mark confusingly similar to Plaintiff's PINK PARADISE® mark in any manner.

70. Defendant's infringing activities using the "Pure Paradise" designation have been without Plaintiff's consent.

71. Plaintiff does not currently have the ability to control the nature or quality of the goods Defendant offers under the "Pure Paradise" designation.

72. Defendant's unauthorized use of the "Pure Paradise" designation is likely to cause confusion, cause mistake, or deceive consumers as to the origin, source, sponsorship, or affiliation of Defendant's goods.

73. Defendant's unauthorized use of the "Pure Paradise" designation is likely to cause consumers to believe, contrary to fact, that Defendant's goods are sold, provided, authorized, endorsed, or sponsored by Plaintiff, or that Defendant is in some way affiliated with or sponsored by Plaintiff and The Colony, when in fact Defendant is not.

74. Indeed, actual consumer confusion has already occurred, including on or about May 30, 2026, where Instagram user @kathyprounis posted a video on her account, which is followed by over 120,000 individuals and brands, showcasing photographs of herself wearing pieces from the Infringing Products and stating she was "loving how Alice & Olivia layered the Colony Hotel and clock tower vibe into this outfit," thereby demonstrating the public's actual confusion and false association between Defendant's Infringing Products and Plaintiff's The Colony Hotel.

75. Defendant's unauthorized use of the "Pure Paradise" designation constitutes federal trademark infringement under 15 U.S.C. § 1114.

76. Upon information and belief, Defendant has committed these acts of infringement with knowledge of Plaintiff's prior rights in the PINK PARADISE® mark and with the willful intent to cause confusion, to cause mistake, or to deceive and to trade off on Plaintiff's goodwill and reputation.

77. Defendant was aware of The Colony's fame and iconic "Pink Paradise" aesthetic, as evidenced by Defendant's reproduction of The Colony's imagery and use of the confusingly similar "Pure Paradise" designation.

78. Defendant's conduct is willful, wanton, and egregious.

79. Defendant's actions are "exceptional" under 15 U.S.C. § 1117, warranting an award of enhanced damages and reasonable attorney's fees.

80. Defendant's conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this Court. Plaintiff has no adequate remedy at law.

81. Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages, reasonable attorneys' fees and costs of the action under 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

**COUNT II**

**FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125(a)**

82. Plaintiff realleges and incorporates each and every allegation in the paragraphs above as if fully set forth herein.

83. For nearly 80 years, Plaintiff has continuously used its famous branding, distinctive architectural design, and imagery depicting The Colony in connection with advertisements, design elements, goods, and services offered to consumers.

84. Plaintiff's use of its branding, architectural design, and imagery in interstate commerce long predates Defendant's unauthorized use of the same in connection with the Infringing Products and Infringing Products.

85. Plaintiff is the owner of the federally registered PINK PARADISE® trademark (U.S. Reg. Nos. 7,773,278 and 7,773,279), which Plaintiff has used continuously and exclusively

in commerce in connection with its hotel services, café services, retail store services, merchandise goods, among other goods and services.

86. Defendant's Infringing Products incorporate imagery that is identical or virtually identical to The Colony's iconic imagery, including its distinctive pink architecture, signature pink façade, famous striped awnings, clock tower, and tropical color palette.

87. Defendant markets and sells the Infringing Products under the "Pure Paradise" designation, which is confusingly similar to Plaintiff's federally registered PINK PARADISE® trademark—all of which creates a false association between Defendant's goods and Plaintiff and The Colony.

88. Defendant has and continues to offer the Infringing Products under the name "Pure Paradise" that is confusingly similar to Plaintiff's federally registered PINK PARADISE mark and in connection with Plaintiff's famous branding, distinctive architectural design, and imagery depicting its hotel.

89. Defendant's use of "Pure Paradise" as the name of the Infringing Products is confusingly similar to Plaintiff's federally registered PINK PARADISE® mark. Both marks share the dominant term "Paradise," employ identical alliterative "P" phrasing, and differ only by the substitution of "Pure" for "Pink." This similarity is likely to cause consumer confusion as to the source, sponsorship, or affiliation of Defendant's goods with Plaintiff.

90. The goods and services that the parties' market, offer, sell, and provide are offered in identical or highly similar trade channels and target similar classes of consumers.

91. Plaintiff has not authorized, directly or indirectly, Defendant's use of Plaintiff's distinctive imagery or brand in any manner.

92. Defendant's activities using Plaintiff's imagery and brand have been without

Plaintiff's consent.

93. Defendant's unauthorized use prevents Plaintiff from having the ability to control the nature or quality of the Infringing Products.

94. Defendant's unauthorized use in commerce of Plaintiff's recognizable imagery, and Defendant's use of the "Pure Paradise" designation, which is confusingly similar to Plaintiff's federally registered PINK PARADISE® mark, is likely to and already has caused consumer confusion as to the origin, source, sponsorship, or affiliation of Defendant's goods with Plaintiff and The Colony.

95. Defendant's unauthorized use in commerce of Plaintiff's recognizable and distinct imagery of The Colony, and Defendant's use of the confusingly similar "Pure Paradise" designation, is likely to cause consumers to believe, contrary to fact, that Defendant's goods are sold, provided, authorized, endorsed, or sponsored by Plaintiff and The Colony, or that Defendant or the Infringing Products are affiliated with or sponsored by Plaintiff, when in fact they are not.

96. Defendant's unauthorized use in commerce of Plaintiff's recognizable and distinct imagery of The Colony, and Defendant's adoption of the "Pure Paradise" designation for the Infringing Products constitutes false designation of origin that is likely to cause confusion, cause mistake, or deceive consumers to falsely belief Defendant or the Infringing Products originate from or affiliated, connected or sponsored by Plaintiff, when they are not.

97. Defendant's conduct is willful and likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Plaintiff and The Colony.

98. Defendant had actual knowledge of Plaintiff, The Colony, and Plaintiff's famous brand and imagery before designing, manufacturing, and selling the Infringing Products, as evidenced by Defendant's physical retail presence in Florida, including in close proximity to The

Colony, and Defendant's precise reproduction of The Colony's distinctive imagery and adoption of the confusingly similar "Pure Paradise" collection name.

99. Upon information and belief, Defendant committed these acts with knowledge of Plaintiff's prior rights and with the willful intent to cause confusion, to cause mistake, or to deceive and to trade off on Plaintiff's goodwill and reputation. Defendant's conduct is willful, wanton, and egregious.

100. Defendant's actions are "exceptional" under 15 U.S.C. § 1117, warranting an award of enhanced damages and reasonable attorney's fees.

101. Defendant's conduct constitutes false designation of origin in violation of 15 U.S.C. § 1125(a).

102. Defendant's conduct is causing immediate and irreparable harm and injury to Plaintiff and to its goodwill and reputation and will continue to damage Plaintiff and confuse the public unless enjoined by this Court. Plaintiff has no adequate remedy at law.

103. Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages, reasonable attorneys' fees and costs of the action under 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## <u>COUNT III</u>
## TRADEMARK DILUTION 15 U.S.C. § 1125(C)

104. Plaintiff realleges and incorporates each and every allegation in the paragraphs above as if fully set forth herein.

105. Plaintiff's PINK PARADISE® mark is a strong, distinctive mark that has achieved widespread public recognition and is thus famous within the meaning of the Lanham Act, 15 U.S.C. § 1125(c).

106. Plaintiff owns federal trademark registrations for the PINK PARADISE® mark

(U.S. Reg. Nos. 7,773,278 and 7,773,279) covering an array of merchandise goods and hotel services. These registrations are valid, subsisting, and in full force and effect.

107. Plaintiff's PINK PARADISE® mark became famous long before any first use date Defendant can claim in connection with the Infringing Products or the "Pure Paradise" designation.

108. Defendant's use of "Pure Paradise" as the name of the Infringing Products is confusingly similar to Plaintiff's famous PINK PARADISE® mark. Both marks share the dominant term "Paradise," employ identical alliterative "P" phrasing, and differ only by the substitution of "Pure" for "Pink."

109. The Colony is instantly recognizable by its signature pink façade, striped awnings, and lush tropical palette, and has become synonymous with the "Pink Paradise" aesthetic that defines its brand identity. The consuming public has come to associate the term "Pink Paradise" exclusively with Plaintiff and The Colony.

110. Through nearly 80 years of continuous and exclusive use in commerce, extensive advertising and promotion, and widespread recognition as a symbol of luxury hospitality, The Colony's PINK PARADISE® mark has become one of the most well-known and distinctive marks associated with the hospitality industry in Palm Beach and the United States.

111. Defendant has used and is continuing to use the "Pure Paradise" designation, which dilutes and is likely to dilute the distinctiveness of Plaintiff's PINK PARADISE® mark by eroding the public's exclusive association of the PINK PARADISE® mark with Plaintiff, and otherwise lessening the capacity of the PINK PARADISE® mark to identify and distinguish Plaintiff's goods and services from those of others.

112. Defendant's unlawful actions, as described herein, began decades after The Colony became famous.

113. Upon information and belief, Defendant acted knowingly, deliberately, and willfully with the intent to trade on Plaintiff's goodwill and reputation, and to dilute Plaintiff's rights in the PINK PARADISE® mark.

114. Defendant was aware of The Colony's fame and iconic "Pink Paradise" aesthetic, as evidenced by Defendant's reproduction of The Colony's copyrighted imagery and use of the confusingly similar "Pure Paradise" designation.

115. Defendant's conduct is willful, wanton, and egregious.

116. Defendant's conduct constitutes federal trademark dilution in violation of 15 U.S.C. § 1125(c).

117. Defendant's conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to damage Plaintiff unless enjoined by this Court. Plaintiff has no adequate remedy at law.

118. Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages, reasonable attorneys' fees and costs of the action under 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT IV
## UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(A)

119. Plaintiff realleges and incorporates each and every allegation in the paragraphs above as if fully set forth herein.

120. Plaintiff has continuously used its famous branding, distinctive architectural design, and imagery depicting The Colony in connection with advertisements, design elements, goods, and services since long before Defendant's unauthorized use in connection with the Infringing Products.

121. Plaintiff's use of its branding, architectural design, and imagery in interstate

commerce long predates Defendant's unauthorized use of the same in connection with the Infringing Products.

122. Defendant has used and continues to use Plaintiff's distinctive and recognizable imagery of The Colony in selling goods that contain identical or highly similar imagery to those that Plaintiff offers.

123. Further, the goods that the parties market, offer, and sell under their respective marks travel in identical or highly similar trade channels and target identical or highly similar classes of consumers.

124. Plaintiff has not authorized, directly or indirectly, Defendant's use of The Colony's distinctive and recognizable imagery in any manner.

125. Defendant's infringing activities have been without Plaintiff's consent.

126. Plaintiff does not currently have the ability to control the nature or quality of the goods Defendant offers using Plaintiff's distinctive imagery.

127. Defendant's unauthorized use in commerce of Plaintiff's distinctive imagery is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendant's goods and services.

128. Defendant's unauthorized use in commerce of the Infringing Products is likely to cause consumers to believe, contrary to fact, that Defendant's goods are sold, provided, authorized, endorsed, or sponsored by Plaintiff, or that Defendant or the Infringing Products are affiliated with or sponsored by Plaintiff, when in fact it is not.

129. Defendant's unauthorized use in commerce of Plaintiff's distinctive imagery and branding as described herein constitutes a false designation of origin and a misleading description and representation of fact.

130. Upon information and belief, Defendant's conduct is willful and is intended to, is likely to, and already has caused confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Plaintiff.

131. Defendant had actual knowledge of Plaintiff, The Colony, and Plaintiff's famous brand and imagery before designing, manufacturing, and selling the Infringing Products, as evidenced by Defendant's physical retail presence in Florida and Defendant's precise reproduction of The Colony's distinctive imagery and use of the confusingly similar "Pure Paradise" name for the Infringing Products.

132. Upon information and belief, Defendant has committed these acts with knowledge of Plaintiff's prior rights and with the willful intent to cause confusion, to cause mistake, or to deceive and to trade off on Plaintiff's goodwill and reputation. Defendant's conduct is willful, wanton, and egregious.

133. Defendant's actions are "exceptional" under 15 U.S.C. § 1117, warranting an award of enhanced damages and reasonable attorney's fees.

134. Defendant's conduct constitutes unfair competition in violation of 15 U.S.C. § 1125(a).

135. Defendant's conduct is causing immediate and irreparable harm and injury to Plaintiff and to its goodwill and reputation and will continue to damage Plaintiff and confuse the public unless enjoined by this Court. Plaintiff has no adequate remedy at law.

136. Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages, reasonable attorneys' fees and costs of the action under 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

**COUNT V**
**UNFAIR COMPETITION UNDER FLORIDA STATUTE §§ 501.201 ET SEQ.**

137. Plaintiff realleges and incorporates each and every allegation in the paragraphs above as if fully set forth herein.

138. Florida Statute section 501.204 provides that "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are … declared unlawful."

139. Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), sections 501.201-.213, are intended to "protect . . . legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202(2).

140. Defendant has sold, and continues to sell, the Infringing Products and Infringing Collection in commerce in Florida and throughout the United States.

141. Defendant's actions constitute false, misleading, or deceptive acts or practices, including, but not limited to: (a) passing off Defendant's goods as those of Plaintiff; (b) causing confusion or misunderstanding as to the source of Defendant's goods and the sponsorship, approval, or certification of its goods by Plaintiff; and (c) causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, Plaintiff.

142. By selling the Infringing Products, Defendant is likely to, and has, deceived consumers and caused actual damage to Plaintiff, specifically to The Colony brand, products, and services.

143. Upon information and belief, Defendant's conduct was willful and deliberate. Defendant had actual knowledge of Plaintiff, The Colony, and Plaintiff's famous brand and imagery before designing, manufacturing, and selling the Infringing Products, as evidenced by

Defendant's physical retail presence in Florida, its familiarity with the Palm Beach market, and its precise reproduction of The Colony's distinctive imagery.

144. Defendant knew or should have known that its conduct would deceive consumers and cause damage to Plaintiff. Despite this knowledge, Defendant proceeded with the design, manufacture, and sale of the Infringing Products, demonstrating a willful disregard for Plaintiff's rights and for the consumers Defendant has deceived.

145. Plaintiff is entitled to, among other relief, an award of economic damages, reasonable attorneys' fees, and costs, together with prejudgment and post-judgment interest.

## COUNT VI
## COMMON LAW UNFAIR COMPETITION

146. Plaintiff realleges and incorporates each and every allegation in the paragraphs above as if fully set forth herein.

147. These acts of Defendant constitute unfair competition in violation of the common law of the State of Florida.

148. Upon information and belief, Defendant's actions were and are willful, knowing, and intended to cause confusion, to cause mistake, or to deceive.

149. Defendant's infringing conduct has allowed Defendant to wrongfully profit, has injured Plaintiff in an amount to be determined at trial, and has caused and threatens to cause irreparable injury to Plaintiff, its goodwill, and reputation, for which Plaintiff has no adequate remedy at law.

150. Defendant's conduct will continue to both damage Plaintiff and confuse the public unless the Court enjoins it.

151. Plaintiff owns all rights, title, and interest in and to The Colony's imagery, trade dress, and the PINK PARADISE® mark, including, but not limited to, all registered and

unregistered rights in such intellectual property, due to Plaintiff's continuous and exclusive use of this intellectual property for nearly 80 years.

152. Defendant has used and is continuing to use imagery, designs, and trade dress that are substantially similar to The Colony's distinctive imagery in connection with the design, manufacture, and sale of goods that are similar and/or related to those that Plaintiff offers.

153. Further, the goods that Defendant markets, offers, sells, and/or provides travel in identical and/or similar trade channels and target identical and/or similar classes of consumers.

154. Plaintiff has not authorized, directly or indirectly, Defendant's use of The Colony's imagery, trade dress, or any mark confusingly similar to Plaintiff's PINK PARADISE® mark in any manner.

155. Defendant's infringing activities have been without Plaintiff's consent.

156. Defendant's unauthorized use of The Colony's imagery and the "Pure Paradise" designation is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendant's goods.

157. Defendant's unauthorized use is likely to cause consumers to believe, contrary to fact, that Defendant's goods are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendant is in some way affiliated with or sponsored by Plaintiff, when Defendant is not.

158. Upon information and belief, Defendant's conduct was and is malicious and wanton, and thus, Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages, punitive damages, reasonable attorneys' fees, and costs of the action under Florida common law, together with prejudgment and post-judgment interest.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury as to all issues so triable.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendant, as follows:

A. Finding that Defendant's activities are unlawful under Federal and Florida law, and entering judgment for Plaintiff and against Defendant on Counts I-VI, inclusive;

B. Preliminarily and permanently enjoining Defendant, any entity that it controls, its predecessors, successors, assigns, divisions, subsidiaries, and joint ventures thereof, together with any and all parent or affiliated companies or corporations, and all officers, directors, employees, agents, attorneys, representatives, and those acting in privity or concert with them or on their behalf, from directly or indirectly:

i. using, reproducing, displaying, distributing, selling, offering for sale, advertising, marketing, or promoting any imagery, designs, or trade dress that copies, reproduces, or is substantially similar to The Colony's distinctive imagery, including its signature pink architecture, striped awnings, clock tower, and tropical color palette, in connection with the design, manufacture, importation, promotion, advertising, marketing, offering for sale, sale, distribution, display, or other use of any goods or services;

ii. using "Pure Paradise" or any other mark, trade name, or designation confusingly similar to Plaintiff's federally registered PINK PARADISE® mark, in connection with the promotion, advertising, offering for sale, sale, or distribution of any goods or services;

iii. representing, suggesting in any fashion to any third party, or performing any act that may give rise to the belief, that Defendant, or any of its goods or services, are related to, authorized by, sponsored by, affiliated with, endorsed by, or otherwise connected to Plaintiff or The Colony;

iv. engaging in any conduct that is likely to cause confusion, or to cause mistake, or to deceive, as to the affiliation, connection, or association of Defendant with Plaintiff or The Colony, or as to the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities by Plaintiff;

v. using any imagery of The Colony, including photographs, illustrations, or other depictions of The Colony's architecture, design elements, or branding, for any commercial purpose; and

vi. otherwise infringing Plaintiff's trademarks, trade dress, or other intellectual property rights;

C. Ordering that Defendant recall and remove the Infringing Products and any products bearing the name "Pure Paradise" from all of Defendant's retail stores, e-commerce sites, social media channels, and marketing materials, and from any third-party retailers, wholesalers, distributors, or online marketplaces;

D. Ordering that Defendant deliver up to Plaintiff, or at Plaintiff's election destroy under Plaintiff's supervision, all Infringing Products and all materials, including artwork, designs, plates, molds, matrices, masters, tapes, films, negatives, and other ways to make the same, in Defendant's possession, custody, or control;

E. Granting such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that any products or services manufactured,

sold, distributed, supplied, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Defendant are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or constitute or are connected with Plaintiff's goods and/or services;

F. Directing, under Section 34(a) of the Lanham Act (15 U.S.C. § 1116(a)), Defendant to file with the Court and serve upon Plaintiff's counsel within thirty (30) days after the service on Defendant of an injunction, or such extended period as the Court may direct, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied therewith;

G. Declaring that Defendant willfully violated Plaintiff's rights;

H. Awarding Plaintiff its actual damages against Defendant in an amount to be determined at trial;

I. Awarding Plaintiff an amount up to three times the amount of its actual damages, in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a));

J. Awarding Plaintiff Defendant's profits from its aforementioned activities;

K. Awarding Plaintiff punitive damages against Defendant;

L. Declaring that this is an exceptional case under Section 35(a) of the Lanham Act, and awarding Plaintiff its costs and reasonable attorneys' fees in this action under 15 U.S.C. § 1117(a), and any other applicable laws;

M. Awarding Plaintiff pre- and post-judgment interest at the maximum legal rate and costs;

N. Awarding Plaintiff an accounting for damages and for all the profits together with those profits lost by Plaintiff due to Defendant's misconduct alleged herein; and

O. Grant such other and further relief as the Court deems just and proper.

Dated: August 26, 2026

Respectfully submitted,

By *_/s/ Adam Wolek_*

Adam Wolek (No. 6301207)
Fox Rothschild LLP
777 South Flagler Drive
Suite 1700, West Tower
West Palm Beach, FL 33401
Phone: (561) 835-9600
Fax: (561) 835-9602
awolek@foxrothschild.com

Clarissa Sullivan (No. 1048526)
Fox Rothschild LLP
One South
101 S. Tryon Street, Ste 1700
Charlotte, NC 28280
Phone: (704) 384-2600
Fax: (704) 384-2800
csullivan@foxrothschild.com

*Counsel for Plaintiff*
*CH Hotel, LLC*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

CH HOTEL, LLC,

Plaintiff,

v.

ALICE + OLIVIA, LLC,

Defendant.

CIVIL ACTION NO. ____________

## VERIFICATION TO COMPLAINT

I, Sarah Wetenhall, of full age, hereby verify as follows:

1. I am the President and Chief Executive Officer of CH Hotel, LLC.

2. I have reviewed the foregoing Verified Complaint and declare that the facts and statements contained therein are true and correct to the best of my knowledge, information, and belief.

3. I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 20th day of August, 2026.

Signed by:
C6153E92BBCA449...
Sarah Wetenhall